# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MELISSA L. NORMAN,**

**Plaintiff,**

-vs-                                                           Case No.  6:09-cv-1594-Orl-31GJK

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

# REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT:

Melissa L. Norman (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits.  Doc. No. 1.  Claimant argues that the final decision of the Commissioner should be reversed because the Administrative Law Judge (the "ALJ") failed to: 1) apply the correct legal standards regarding the medical opinion evidence; 2) properly consider and make findings as to Claimant's prescription medications; and 3) consider and include any nonexertional, mental limitations in his residual functional capacity ("RFC") assessment. Doc. No. 15 at 1-19.[1]  For the reasons set forth below, **it is recommended that the Commissioner's decision be REVERSED**

---

[1] In Claimant's statement of issues only two issues are identified: 1) "[t]he ALJ did not apply the correct legal standard to the opinion evidence"; and 2) "[t]he ALJ did not apply the correct legal standards to [Claimant's] prescription medications." Doc. No. 15 at 2.  However, a variety of other issues appear in the body of Claimant's brief, including an entirely new issue as to the ALJ's RFC, which appears on page seventeen (17) of the brief.  Doc. No. 15 at 11- 20.  Claimant's counsel is an experienced practitioner in Social Security Disability litigation before this Court.  Although the undersigned has considered all issues presented throughout the brief, the Court would find it helpful for counsel to more completely and accurately frame the issues in their "Statement of Issues."

**and REMANDED pursuant to sentence four of Section 405(g) because the final decision is not supported by substantial evidence due to the ALJ's failure to state with particularity the weight given to two of Dr. Gillespy's opinions and the reasons therefor.**

## I.    BACKGROUND.

Claimant was born on February 2, 1959.  R. 30, 288, 404.  Claimant graduated from high school and has past employment experience as a cashier, sandwich maker, and an assistant manager for a pharmacy.  R. 114, 404-06, 421-22. On October 10, 2002, Claimant filed an application for benefits alleging an onset of disability as of November 20, 2001.  R. 288, 291, 295.  Claimant later amended her onset of disability date to August 23, 2002.  R. 15, 29. Claimant alleges disability due to: low back pain; carpal tunnel syndrome; and anxiety.  R. 122, 291, 295, 416-17.  From October 10, 2002 through the date of Commissioner's final decision, the Claimant continued to work part-time for two hours a days, six days a week, as a cashier at a local Subway.  R. 114, 405-06.

## II.    RELEVANT OPINION EVIDENCE.

Claimant received regular medical care from four primary sources throughout the relevant time period: Halifax Medical Center; Dr. Moussly; Dr. Gillespy; and Dr. Zwolinski. R. 142-98, 200-59, 268-77, 282-87, 369-89.  The record contains the following medical opinions[2] regarding Claimant's medically determinable impairments and functional limitation:

---

[2]Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."  20 CFR §§ 404.1527(a)(2), 416.927(a)(2); *see also Winschel v. Commissioner of Social Security*, -- F.3d --, 2011 WL 198372 at *2 (11th Cir. Jan. 24, 2011).

### A.  TREATING PHYSICIANS.

1.  Dr. Gillespy – August 28, 2002.

On August 28, 2002, Claimant presented to Dr. Gillespy, her treating physician, for an orthopedic consultation following an August 23, 2002 motor vehicle accident.  R. 179, 242. Claimant complained of pain in her lower back and left leg.  R. 242.  Claimant stated that she experiences low back pain radiating into the left buttock and down the left leg into the foot.  R. 242.  Claimant stated that the pain is worse with sitting or during any activity, but she does get some relief with lying in bed.  R. 242.  Physical examination revealed the Claimant was in "no acute distress," walked with a slow gait, but climbed on and off the examination table without difficulty.  R. 241.  Claimant had moderate tenderness over the lumbrosacral joint and left sciatic notch with spasm noted in the paravertebral musculature of the lumbar region.   R. 241.  No trigger points were indicated.  R. 241.  Claimant displayed markedly restricted ranges of motion in the lumbar spine which were "very painful."  R. 241.  No tenderness was seen in the lower extremities and ranges of motion there were normal.  R. 241.  Claimant's straight leg testing was positive on the right and the left leg.   R. 241.   Dr. Gillespy's impressions were: "acute musculoligamentous strain, lumbar spine; [and] possible herniated disc with left sciatica."  R. 240.   He recommended: spine exercise counseling; a lumbrosacral corset; physical therapy; Darvocet for pain; Soma for muscle relaxation; and x-rays.  R. 240.  At that time, Dr. Gillespy opined that Claimant's work status was "[l]ight duty, very limited work, sedentary, such as cashier [for] two or three hours per day."  R. 240.

2.  Dr. Moussly – January 21, 2003**.**

On January 21, 2003, Dr. Moussly completed a Florida Department of Health Questionnaire wherein he opined that Claimant did not suffer from a mental impairment that significantly interferes with her daily functioning.  R. 201.  Dr. Moussy stated that no referral for psychological or psychiatric treatment had been made and the Claimant was treated by him with Serzone.  R. 201.[3]

3.  Dr. Gillespy – February 19, 2003.

On February 19, 2003, while undergoing a course of physical therapy, Claimant presented to Dr. Gillespy complaining of moderate pain and numbness in the right arm.  R. 223. Physical examination showed slight tenderness and pain in the cervical spine and moderately restricted ranges of motion.  R. 223.  Claimant was also walking with a slight gait.  R. 223.  Dr. Gillespy's assessment was: cervical strain; impingement of the right shoulder; possible carpal tunnel syndrome; and possible thoracic outlet syndrome.  R. 223.  He recommended Claimant continue her home neck exercises and ordered EMG and Nerve Conduction tests of the neck and right arm.  R. 223.  Dr. Gillespy opined that Claimant's work status was "[p]art time, light duty" work.  R. 223.

4.  Dr. Gillespy – July 2, 2003.

On July 2, 2003, Claimant received the results of an MRI from Dr. Gillespy.  R. 215.[4] The MRI revealed osteoarthritis, degenerative disc disease at C5-C6 and C6-C7, with some thecal sac compression at C5-6 and a herniated nucleus pulposus at C6-7.  R. 215.  Claimant

---

[3] On November 2, 2004, Dr. Moussly recommended that Claimant seek psychiatric treatment for her anxiety, but Claimant declined to see a psychiatrist.  R. 387.
[4] In his decision, the ALJ refers to Dr. Gillespy's July 2, 2003 treatment notes as the July 1, 2003 treatment notes. R. 318.

reported having "much less pain in the cervical area with mild stiffness, moderate pain in the low back and occasional pain in the right hand."  R. 215.  Claimant stated her activities were "normal" and she was working part time.  R. 215.  Physical examination revealed moderately restricted ranges of motion in cervical spine with mild pain, positive Spurling's maneuver, mild tenderness over the lumbrosacral joint, negative straight leg testing, no tenderness over the right hand, normal range of motion of the hand, normal ambulation, and no neurologic deficits.  R. 215.  Dr. Gillespy's assessment was: osteoarthritis and degenerative disc disease of C5-C6, C6-C7, with a small herniated nucleus pulposus at C6-C7; satisfactory results from the right carpal tunnel release; and chronic lumbrosacral strain.  R. 215.  Dr. Gillespy recommended that Claimant continue to exercise, and continue her home neck and back exercises.  R. 215.

>    5.  Dr. Gillespy – July 31, 2003.

On July 31, 2003, Dr. Gillespy, in a questionnaire provided by the Commissioner, opined that Claimant has restricted ranges of motion in the cervical and lumbar spine and right shoulder.  R. 257.  He stated that Claimant has positive straight leg testing in both legs, and noted that she walks with a slight limp, but does not need an assistive device for ambulation.  R. 257. He opined that her grip strength was essentially normal, she could not squat, and could not walk on toes or heels.  R. 257.

>    6.  Dr. Gillespy – August 14, 2003.

On August 14, 2003, Claimant reported "less pain in the neck, with moderate stiffness," and "intermittent pain with moderate stiffness of the low back."  R. 268.  Claimant stated that her ambulation and activities were "mildly decreased."  R. 268.  Physical examination showed no tenderness over the cervical region and mildly restricted ranges of motion without pain in the

cervical spine.  R. 268.  Motion of the lumbar spine, however, was moderately restricted and painful.  R. 268.  Straight leg testing was positive on the right and left.  R. 268.  Dr. Gillespy's assessment was: cervical herniated nucleus pulposus – resolved; and herniated nucleus pulposus, lumbar spine.  R. 268.  Dr. Gillespy opined that Claimant had reached maximum medical improvement with a five (5) percent permanent partial impairment of the whole body due to the August 23, 2002, motor vehicle accident.  R. 268.  He also recommended: conservative orthopedic care; a "<u>cane with ambulation as needed</u>"; a lumbrosacral corset; and counseling in home exercises.  R. 268 (emphasis added).  Claimant was discharged to return on an as needed basis.  R. 268.

       7.  Dr. Moussly – November 10, 2004.

On November 10, 2004, Dr. Moussly completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) wherein he opined that Claimant could only lift and carry less than ten pounds occasionally, <u>stand or walk less than two hours</u> in an 8-hour workday, sit for less than six hours in an 8-hour workday, and was limited in pushing and pulling in the lower extremities.  R. 279-80.  Dr. Moussly stated that Claimant develops pain in the lower back if she lifts ten pounds or less or if she stands or walks for two hours or more.  R. 280.  Dr. Moussly stated that Claimant has severe pain in the lower back if she sits or pushes and pulls objects.  R. 280.  Dr. Moussly opined that Claimant's impairments would cause her to miss work about twice a month.  He further stated that she could occasionally climb, balance, kneel, crouch, or crawl.  R. 280.  Dr. Moussly further opined that Claimant cannot vacuum, but she can sweep floors.  R. 281.

8.  Dr. Zwolinski – June 16, 2006.

On June 16, 2006, Claimant presented to Dr. Ralph J. Zwolinski, a neurosurgeon, for an evaluation of her low back pain.  R. 374.  Claimant stated that since her motor vehicle accident she has had left leg pain and, over the past three months, increased right leg pain.  R. 374. Claimant reported that she was having difficulty working.  R. 374. Claimant described the pain as radiating into both buttocks and into her legs.  R. 374.  Claimant denied any weakness in her legs.  R. 374.  Physical examination revealed: no acute distress; normal motor strength in the upper and lower extremities; decreased sensation at the S1, but no muscle atrophy; normal gait with an equal heel-toe walk without bradykinesia or dyskinesia; tenderness along the left and right posterior iliac crest; sciatic notch tenderness on the left and right side; and negative straight leg testing.  R. 373.  Dr. Zwolinski impressions were: "suspect lumbar radiculopathy," and "possible recurrent disc herniation."  R. 373.  He ordered an MRI and an EMG.  R. 372.  Dr. Zwolinski opined that Claimant could "continue to work two to three hours per day without limitations."  R. 372.[5]

## B.  CONSULTING PHYSICIANS – EXAMINING.

On February 12, 2003, Dr. Hugh Coleman performed a state agency consultative examination.  R. 127-130.  Dr. Coleman's physical examination revealed "some fullness with

---

[5]Claimant continued to see Dr. Zwolinski, and on August 17, 2006, Dr. Zwolinski's impressions were: lumbar radiculopathy; L4 foraminal stenosis; facet arthropathy of L4-L5 and L5-S1; degenerative disc disease of L3-L4, L4-L5, and L5-S1 with scar tissue present at L5-S1; and probable cervical radiculopathy.  R. 376.  Claimant declined physical therapy or epidural steroid injections.  R. 375.  On November 16, 2006, Claimant presented to Dr. Zwolinski stating that over the preceding months "she has done very well," and "has decreased pain."  R. 377.  "Her pain level is below a 3/10 on a 1-10 scale."  R. 377.  Claimant reported that she only takes Tylenol #3 as needed and has only taken two pills over the past month.  R. 377.  Claimant denied any gait abnormalities.  R. 377.  Physical examination showed negative sitting root and straight leg tests.  R. 377.  Dr. Zwolinski's impression was chronic lumbar radiculopathy.  R. 377.  Dr. Zwolinski's treatment plan was for Claimant to continue taking Elavil and Tylenol #3 as needed.  R. 377.

palpation over the cervical spine," full range of motion of the cervical and lumbar spine, and negative straight leg testing.  R. 129.  Dr. Coleman did note that Claimant had "some pain" with range of motion testing of the cervical spine.  R. 129.  Full range of motion and strength were demonstrated in both the upper and lower extremities.  R. 129.  Claimant displayed normal heal and toe walking, and a normal gait.  R. 129.  Neurologic examination was normal.  R. 129.  Dr. Coleman's assessment was postoperative low back pain, cervical strain, generalized anxiety disorder –stable, and tobacco abuse.  R. 129.

### C.  CONSULTING PHYSICIANS – NON-EXAMINING.

In 2003, two state agency consultants performed reviews of the medical records.  R. 134-41, 260-67.  They each found that Claimant could: occasionally lift and/or carry 20 pounds occasionally; frequently lift 10 pounds; stand and/or walk about six hours in an 8-hour workday; and sit about six hours in an 8-hour workday. R. 135, 261.  One consultant opined that Claimant was limited in pushing or pulling with the upper extremities because she was unable to perform repetitive motions while the other consultant opined that Claimant was unlimited in pushing or pulling.  R. 135, 261.  One consultant opined that Claimant could frequently climb stairs while the other consultant opined that Claimant could only occasionally climb stairs.  R. 136, 262.  The consultants were also split on whether Claimant could frequently or occasionally balance and crawl.  R. 136, 262.  The consultants agreed that Claimant could frequently kneel, but could only occasionally stoop and crouch.  R. 136, 262.  One consultant opined that Claimant was limited in reaching overhead, while the other found no manipulative limitations.  R. 137, 263.   Neither consultant found any visual or communicative limitations.  R. 137-38, 263-64.  One consultant found that Claimant should avoid concentrated exposure to vibrations, while the other opined

that Claimant should avoid concentrated exposure to hazards.  R. 138, 264.  Both consultants found that Claimant's symptoms were attributable to a medically determinable impairment, but the severity of the symptoms were disproportionate to the severity of Claimant's medically determinable impairments.  R. 139, 265.

### III.    PROCEEDINGS BELOW.

Claimant's application was denied initially and upon reconsideration.    R. 51-54. Thereafter, Claimant requested a hearing before an ALJ.  R. 64.  On December 13, 2004, a hearing was held before ALJ Charles Romo.  R. 27-50.  Claimant, who was represented by Luis Garcia, Esq., was the only person to testify at the hearing.  R. 27-50.  On April 26, 2005, ALJ Romero issued a decision finding Claimant not disabled.  R. 11-26.  Claimant sought review in the District Court and, on March 27, 2006, the parties jointly sought remand to the Commissioner for further proceedings.  *See Norman v. Commissioner of Social Security*, Case No. 6:05-cv-1839-Orl-KRS, Doc. Nos. 1, 15 (M.D. Fla. 2006).  On March 28, 2006, judgment was entered remanding the case to Commissioner.  *Id*. at Doc. No. 17; R. 339.  On June 4, 2007, the Appeals Council entered an order remanding the case to the ALJ to "obtain vocational expert testimony to determine the impact of the [C]laimant's limitations on the wide range of light work, and to identify jobs, if any the [C]laimant can perform with her limitations."  R. 344.

On October 30, 2007, a hearing was held before ALJ Robert Droker.  R. 401-35. Claimant was represented by Robert Ginsberg, Esq.  R. 401.  Claimant, Ronald Spitznagel, the Vocational Expert (the "VE"), and Matthew Clough, Claimant's boyfriend, were the only persons to testify.  R. 402.  At the hearing, Claimant testified that in an eight hour workday she could stand a total of about three-and-a-half or four hours and she could sit for a total of three or

four hours.  R. 415.[6]

On March 27, 2008, the ALJ issued a decision finding Claimant not disabled.  R. 311-21.

In his decision, the ALJ made the following findings:

1. The Claimant meets the insured status requirements of the Social Security Act through December 31, 20110;

2. The Claimant has not engaged in substantial gainful activity since November 20, 2001, the alleged onset date.  Although the [C]laimant has worked since the alleged disability onset date, the record does not establish that this work was performed at the presumptive level of substantial gainful activity.  The Claimant reported that since April 2005, she has been working two and a half hours a day, six days a week at a Subway sandwich shop;[7]

3. The Claimant has the following severe impairments: disorders of the spine, status-post laminectomy (March 2002); status-post motor vehicle accident (August 2002); anxiety; asthma (under control with medication); arthritis; right shoulder injury.  The Claimant has the following non-severe impairment: carpal tunnel syndrome (status-post release);

4. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1;

5. After careful consideration of the entire record, [the ALJ] finds that the Claimant has the [RFC] to perform light work as defined in 20 CFR [§] 404.1567(b) and 416.967(b) with a sit-stand option, maximum lifting of 10 pounds, no more than occasional bending, crouching, kneeling, stooping, squatting or crawling, and a need to avoid: ladders or unprotected heights; operation of heavy moving machinery; unusual stress; repetitive pushing and pulling of arm controls with the right arm;

6. The Claimant is unable to perform any past relevant work;

7. The Claimant was born on February 6, 1959 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date;

8. The Claimant has at least a high school education and is able to communicate in English;

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [C]laimant is "not disabled," whether or not the Claimant has transferable job skills;

---

[6] She also testified she could walk at a slow pace for a half-hour.  R. 416.
[7] Claimant amended her alleged onset date to August 23, 2002.  R. 15, 29.

10. Considering the Claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the Claimant can perform; and

11. The Claimant has not been under a disability, as defined in the Social Security Act, from September 3, 2005 through the date of this decision.

R. 311-21.  Thus, ALJ Droker determined that the Claimant is not disabled.  R. 311-21.

When addressing the opinion evidence, ALJ Droker stated the following:

> The [ALJ] has not assessed any significant limitations with walking or standing as the [C]laimant testified that she would be able to stand for three or four hours in an eight hour day and could walk at a slow pace for half an hour.  In reaching this decision, the [ALJ] has not attached any significant weight to a July 31, 2003, report from Thurman Gillespy, M.D.  Dr. Gillespy reported to the State agency that the [C]laimant has restricted ranges of motion in her right shoulder and cervical and lumbar spines, and that she walked with a slight limp, but did not require an assistive device.  This report is inconsistent with a July 1, 2003, report from Dr. Gillespy which documents that the [C]laimant walked with a normal gait, had negative straight leg raising bilaterally, and had no neurological deficits.  On August 14, 2003, Dr. Gillespy reported that the [C]laimant had reached maximum medical improvement ("MMI") from her August 2002 motor vehicle accident with a 5% permanent impairment and a cane with ambulation, as needed.  As there is [no] evidence documenting why the [C]laimant['s] ability to ambulate normally on July 1, 2003, deteriorated to the extent that [she] required a cane on August 14, 2003, the [ALJ] cannot give any weight to this report.  Moreover, the [C]laimant specifically denied having any gait abnormalities on August 17, 2006.

> The state agency medical consultants who reviewed the medical record initially and upon reconsideration concluded that the [C]laimant was capable of performing a wide range of light work.

> On November 10, 2004, Dr. Moussly reported that the [C]laimant was able to sit for less than six hours in an eight hour day, stand and/or walk for less than two hours in an eight hour day; lift/carry less than 10 pounds occasionally; balance, crouch, crawl, kneel and climb occasionally.  Dr. Moussly reported that he bases these limitations on the [C]laimant's reports of lower back pain.  The

> [ALJ] has not attached any significant weight to Dr. Moussly's opinion as it is contradicted by the [C]laimant's testimony that she is able to stand for three to four hours. Furthermore, Dr. Moussly did not address why the [C]laimant would be unable to remain seated if provided with a sit-stand option. Moreover, Dr. Moussly has encouraged the [C]laimant to remain active as he has recommended that she exercise.
>
> On June 16, 2006, Ralph J. Zwolinski, M.D., reported that the [C]laimant could continue to work two to three hours a day without limitation. Dr. Zwolinski did not preclude the [C]laimant from working more than two to three hours.

R. 318 (emphasis added). Thus, the ALJ gave "no significant weight" to Dr. Gillespy's July 31, 2003 opinion that Claimant walked with a slight limp because it was inconsistent with Dr. Gillespy's July 1, 2003 treatment record, which indicated that Claimant walked with a normal gait, had no neurological deficits, and negative straight leg tests. *Compare* R. 215 *with* R. 318. The ALJ also gave no weight to Dr. Gillespy's August 14, 2003 opinion that Claimant reached MMI with a five percent permanent partial impairment of the whole body and recommended conservative orthopedic care and a "cane with ambulation as needed," because there is no evidence documenting why the Claimant's ability to ambulate normally on July 1, 2003 deteriorated to the extent Claimant required a cane on August 14, 2003. R. 318 (emphasis added). The ALJ also noted that on August 17, 2006, Claimant denied having any gait abnormalities. *Compare* R. 318 *with* R. 376.

The ALJ did not attach any significant weight to Dr. Moussly's November 10, 2004 opinion because it was contradicted by Claimant's testimony that she could stand for three to four hours in an eight hour workday and because Dr. Moussly's treatment records encouraged Claimant to exercise. R. 318. The ALJ did not state what weight, if any, he assigned to Dr. Zwolinski's June 16, 2006 work status statement that Claimant could continue to work two to

three hours a day without limitations. R. 318. However, the ALJ did state that Dr. Zwolinski "did not preclude the [C]laimant from working more than two to three hours." R. 318.

The ALJ did not discuss or state with particularity the weight given to the August 28, 2002 and February 19, 2003 opinions of Dr. Gillespy. R. 311-21. Although the ALJ did not state with particularity the weight given to the February 12, 2003 opinion of Dr. Coleman, the ALJ did state that Dr. Coleman "noted no significant clinical abnormalities other than pain complaints." *See* R. 317. Moreover, although the ALJ discussed the opinions of the non-examining state agency consultants, the ALJ did not state with particularity the weight given to those opinions. R. 318.

As set forth above, the ALJ assessed Claimant's RFC as the ability to "perform light work . . . with a sit-stand option, maximum lifting of 10 pounds, no more than occasional bending, crouching, kneeling, stopping, squatting or crawling, and a need to avoid: ladders or unprotected heights; operation of heavy moving machinery; unusual stress; repetitive pushing and pulling of arm controls with the right arm." R. 316. The ALJ then stated the following regarding the opinion evidence:

> After considering the medical opinion evidence and testimony, the [ALJ] finds that the [C]laimant's spine impairments could reasonably be expected to cause some pain, but would not preclude her from performing the activities in the assessed [RFC]. The mere existence of pain, even chronically, does not require a finding that an individual cannot work and the fact that working may cause pain and discomfort does not mandate a finding of disability. . . . Indeed, the [C]laimant's testimony contain [sic] admissions regarding her ability to function notwithstanding pain, and the [ALJ] finds that these abilities would not preclude the activities described in the assessed [RFC].

R. 318-19. Based on the forgoing, the ALJ found the Claimant not disabled. R. 321.

Claimant requested review of the ALJ's decision and, on July 21, 2009, the Appeals Council denied Claimant's request for review making the ALJ's decision the final decision of the Commissioner. R. 301-03.  Thereafter, Claimant sought review of the Commissioner's final decision in the District Court.  Doc. No. 1.

## IV.   THE ISSUES.

The Claimant raises the following five issues regarding the Commissioner's final decision:

1. The ALJ did not apply the correct legal standard to the opinion evidence by failing to state with particularity the weight given and the reasons therefor to the opinions of Claimant's treating physicians;

2. The ALJ lacked good cause to reject the opinions of Drs. Gillespy and Moussly. Claimant maintains that their opinions are supported by their own treatment records and should be given controlling weight.  Moreover, Claimant argues that the ALJ impermissibly assigned more weight to the opinions the non-examining state agency consultants than to the opinions of Drs. Gillespy and Dr. Moussly;

3. The ALJ mischaracterized Dr. Zwolinski's opinion by stating that it allowed Claimant to work more than three hours per day;

4. The ALJ erred by failing to apply the correct legal standards as to Claimant's prescription medications.  Claimant maintains that there is evidence that her medications cause side-effects, including drowsiness, and the ALJ made no findings as to the affect of Claimant's medications on her ability to work;  and

5. The final decision must be reversed because the ALJ's RFC assessment failed to include any consideration of Claimant's nonexertional, mental limitations.

Doc. No. 15 at 9-19.  Accordingly, Claimant requests that the Court enter an order reversing the final decision of the Commissioner and remanding for an award of benefits.  Doc. No. 15 at 17, 19.

The Commissioner generally maintains that substantial evidence support the final decision of the Commissioner.  Doc. No. 18 at 11-24.  As to the five issues raised above, the Commissioner argues:

1. The ALJ "fully considered and properly discredited the opinions" of Claimant's treating physicians (R. 19);

2. The ALJ had good cause to reject the opinions of Drs. Gillespy and Moussly because their treatment records were inconsistent with their opinions;

3. Dr. Zwolinski simply stated that Claimant was capable of continuing her current part-time work and offered no opinion regarding whether Claimant was capable of performing work for eight hours a day.  Therefore, because Dr. Zwolinski's statement was not an opinion precluding Claimant from working an eight hour workday, the ALJ did not err in failing to assign it weight, controlling or otherwise;

4. The ALJ specifically noted that Claimant alleged that her medications cause drowsiness and properly dismissed that allegation when finding Claimant's subjective statements concerning the intensity, persistence and limiting effects of her symptoms not credible; and

5. The ALJ's RFC included Claimant's non-exertional, mental limitations in concentration by precluding her exposure to stress.

Doc. No. 18 at 11-24.  Thus, the Commissioner maintains that the final decision is supported by substantial evidence and applied the proper legal standards.  Doc. No. 18 at 24.  Accordingly, the Commissioner requests that the final decision be affirmed.  *Id*.

## V.   LEGAL STANDARDS.

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274, 1278

(11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order.  If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## B.     THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

-16-

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."   *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## C.   REMEDIES.

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause.   42 U.S.C. § 405(g)(Sentence Four).   To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.   *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand

appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

   This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[8]

---

[8] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

## VI.  <u>ANALYSIS</u>.

Claimant maintains that the ALJ did not apply the correct legal standard to the opinion evidence.  Doc. No. 15 at 2, 11-17.  More specifically, Claimant argues that the ALJ failed to state with particularity the weight he gave to the different medical opinions and the reason therefor.  Doc. No. 15 at 14.  Claimant acknowledges that the ALJ did weigh and reject the July 31, 2003 and August 14, 2003 opinions of Dr. Gillespy, and the November 10, 2004 opinion of Dr. Moussly, but Claimant argues that the ALJ lacked good cause to reject those opinions.  Doc. No. 15 at 13-14.   Additionally, Claimant maintains that the ALJ mischaracterized and failed to state what weight was given to Dr. Zwolinski's June 16, 2006 opinion that Claimant could continue working her part-time job without limitations.  Doc. No. 15 at 14-15.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability.   The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence.  In *Winschel v. Commissioner of Social Security*, -- F.3d --, 2011 WL 198372 at *2 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, <u>what the claimant can still do despite his or her impairments</u>,  and the claimant's physical and mental restrictions, the statement is an opinion  requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).  The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the

ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 2011 WL 198372 at *2 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).  *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

In *Winschel*, the Commissioner argued that the ALJ did not err by failing to state the weight he gave to a treating physician's treatment notes and the reasons therefor because they did not constitute an "opinion."  *Id*. at *2.   The Eleventh Circuit disagreed because the treatment notes contained "a description of Winschel's symptoms, a diagnosis, and a judgment about the severity of his impairments, and clearly constituted a 'statement[] from [a] physician . . .  that reflect[s] judgments about the nature and severity of [Winschel's] impairment(s), including [Winschel's] symptoms, diagnosis and prognosis, what [Winschel] can still do despite impairment(s), and [Winchel's] physical or mental restrictions.'"  *Id*. at 2 (quoting 20 CFR §§ 404.1527(a)(2), 416.927(a)(2)).  Thus, the treating physician's treatment notes constituted an opinion.  *Id*.   The Eleventh Circuit noted that the ALJ only referenced the treating physician once and did not state the weight given to the treating physician's opinion. *Id*.  The Eleventh Circuit reversed stating that "[i]t is possible that the ALJ considered and rejected these . . . medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence." *Id*. at *2.

In this case, the ALJ failed to discuss, much less state with particularity the weight assigned to, Dr. Gillespy's August 28, 2002 and February 19, 2003 opinions. *Compare* R. 311-21 *with* R. 223, 240-42.   Both opinions reflect judgments about the nature and severity of the Claimant's condition, including symptoms, diagnosis, and prognosis.   R. 223, 240-42. Moreover, both opinions contain statements reflecting the physical restrictions imposed upon Claimant as a result of her impairments: "[l]ight duty, very limited work, sedentary, such as cashier [for] two or three hours per day" (R. 240); and "[p]art time, light duty" (R. 223). Importantly, both opinions limit Claimant to only part-time work.

The undersigned has considered whether the ALJ's failure to state with particularity the weight given to Dr. Gillespy's August 28, 2002 and February 19, 2003 opinions and the reasons therefor is harmless error.   In *Mills v. Astrue*, 226 Fed.Appx. 926, 931-32 (11th Cir. 2007) (unpublished), a case where the ALJ's reasons for discrediting the opinion of one of the claimant's treating physicians was not supported by substantial evidence, the Eleventh Circuit considered whether such a failure could constitute harmless error.[9]   The Eleventh Circuit stated that "when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand." *Mills*, 226 Fed.Appx at 931 (citing *Diorio v. Heckler*, 721 F.3d 726, 728 (11th Cir. 1983) (finding that ALJ's mischaracterization of past work was harmless error, because there was no severe impairment found)).   In *Mills*, 226 Fed.Appx. at 931-32, the Eleventh Circuit concluded that the ALJ's failures were not harmless error, stating:

> While there is evidence in the record, such as Dr. Lovett's and Dr. Amiel's opinions, that supports the ALJ's final decision, the ALJ did not mention nor explain the weight given to either of these

---

[9] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.

opinions. We cannot say the error was harmless without re-
weighing the evidence. To do so would call for conjecture that
invades the province of the ALJ. *See Moore v. Barnhart*, 405 F.3d
1208, 1214 (11th Cir. 2005) (per curiam) (remanding where the
ALJ failed to consider certain factors and indicate their impact on
his ultimate functional capacity conclusion); *Wilson v. Comm'r of
Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) ("A court cannot
excuse the denial of a mandatory procedural protection simply
because, ... there is sufficient evidence in the record for the ALJ to
discount the treating source's opinion and, thus, a different
outcome on remand is unlikely."). The ALJ is not required to give
the treating doctor's opinion substantial weight, but if he does not
do so, he must show good cause by clearly articulating reasons that
are supported by the evidence. Because this ALJ has failed to do
so, we reverse and remand for further proceedings consistent with
this opinion.

*Id*. Therefore, despite the fact there were medical opinions in the record that supported the

ALJ's findings, the ALJ's error was not harmless because the ALJ failed to explain the weight

given to the opinions of two physicians which actually supported the ALJ's ultimate decision.

*Id*. at 931-932. The Eleventh Circuit noted that to find otherwise would constitute reweighing

the evidence and "would call for conjecture that invades the province of the ALJ." *Id*. at 931-32;

*see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 592 (11th Cir. 2006)

(unpublished) (same).

When read in conjunction with the Eleventh Circuit's recent opinion in *Winschel*, the

undersigned finds *Mills* persuasive to the extent that the ALJ's failure to state with particularity

the weight given to Dr. Gillespy's August 28, 2002 and February 19, 2003 opinions is not

harmless error. Those opinions limit Claimant to part-time work, which directly contradict the

ALJ's ultimate decision. Accordingly, it is recommended that the Court find that the ALJ failed

to apply the correct legal standards regarding the medical opinion evidence and, therefore, the

final decision is not supported by substantial evidence.[10]

Although Claimant requests a reversal for an award of benefits, based on this record, it is recommended that the Court not find that the Claimant is disabled beyond a doubt or suffered an injustice.  *See Davis*, 985 F.2d at 534 (claimant entitled to award of benefits where evidence establishes disability beyond a doubt); *Walden*, 672 F.2d at 840 (claimant entitled to award of benefits where claimant has suffered an injustice).  In this case, as in *Mills*, there is evidence which would support the ALJ's ultimate decision, such as Claimant's testimony about her ability to work and Dr. Zwolinski's more recent assessment of Claimant's condition.  R. 377, 415-15.  Accordingly, it is recommended that the Court find a remand under sentence four of Section 405(g) is appropriate.[11]

## VII.    CONCLUSION.

For the reasons stated above, it is **RECOMMEND** that final decision of the Commissioner be **REVERSED and REMANDED pursuant to sentence four of Section 405(g) because the final decision is not supported by substantial evidence due to ALJ's**

---

[10] The ALJ also failed to state with particularity the weight given to Dr. Zwolinski's June 16, 2006 opinion that Claimant could "continue to work two to three hours per day without limitations."  R. 396.  The ALJ simply stated that Dr. Zwolinski's opinion "did not preclude the [C]laimant from working more than two to three hours."  R. 318.  In *Lamb v. Bowen*, 847 F.2d 698, 701, 703 (11th Cir. 1988), the claimant's treating physician opined that he was not capable of performing his past medium exertional level work.  The Eleventh Circuit stated:

> It is true that [claimant's treating physician] did not restrict [claimant] from light work.  In fact, [claimant's treating physician] did not address the issue of any type of work, but [claimant's] former work.  Such silence is equally susceptible to either inference, therefore, no inference should be taken.

*Lamb*, 847 F.2d at 703.  In this case, it appears that the ALJ inferred that Claimant could do more than part-time work for two to three hours per day.  On remand, the ALJ should state with particularity the weight, if any, given to Dr. Zwolinski's June 16, 2006 opinion and the reasons therefor.

[11] As mentioned above, the weight to be given such evidence is for the ALJ to determine, not the Court.  *Winschel*, 2011 WL 198372 at *2.

**error in failing to state with particularity the weight given to two of Dr. Gillespy's opinions and the reasons therefor.**[12]

Failure to file written objections to the proposed findings and recommendations contained in this report **within ten (10) calendar days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on February 14, 2011.

_Greg Kelly_

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson, Esq.
3222 Corrine Drive, Suite E
Orlando, Florida 32803


Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida        33602


Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration

---

[12] Because it is recommended that the Court find the Commissioner's decision is not supported by substantial evidence due to the ALJ's failure to apply the proper legal standards to the medical opinion evidence, the Court's inquiry must stop here in order to avoid impermissibly reweighing the evidence. *See Mills*, 226 Fed.Appx. at 931-32.

61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Robert Droker
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building, #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224